UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO: 3:08-bk-2133-JAF

IN RE:

BONITA NIX DONOVAN

Debtor.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW the Movant, DANIEL J. WAHBY, ROBIN M. WAHBY, GERALD P. FLETCHER and BARBARA J. FLETCHER, by and through undersigned counsel, and respectfully represents:

1. On or about April 18, 2008, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

2. The Movant is the holder of a promissory note dated September 2, 2005 in the original principal amount of $585,000.00 secured by a mortgage on the real property located at First Street South, Jacksonville Beach, Florida 32250 and legally described in as follows:

> The South 55 feet of Lot 8, Block 42, PABLO BEACH SOUTH, according to plat thereof as recorded in Plat Book 3, page 28 of the current public records of Duval County, Florida.

Copies of the note and mortgage are attached hereto.

3. The Debtor is in default under the terms of the note and mortgage and as a result, Movant obtained a Final Judgment of Foreclosure in Duval County Circuit Court Case No: 2008-CA-404 on March 20, 2008 for $625,937.79. Attached hereto is a conformed copy of that Final Judgment

of Foreclosure with copies of the note and mortgage attached thereto as Exhibits "A" and "B" respectively.

4. Movant lacks adequate protection for its interest in the property.

5. The Debtor has no equity in the property. The Final Judgment of Foreclosure entered in Duval County Circuit Court Case No: 2008-CA-404 on March 20, 2008, a copy of which is attached hereto was for $625,937.79. Attached hereto is a copy of the property appraiser's information reflecting a 2007 certified market value of $414,700.00 and 2008 in progress of $223,300.00. Additionally, paragraph 2.04 of the Debtor's Chapter 11 plan filed April 18, 2008 indicates that "The Debtor will value this property at the replacement value of $400.000.00"

6. The property is not necessary for an effective reorganization

7. If Movant is not permitted to protect its interest in the property by being allowed to proceed with foreclosure, they will suffer irreparable injury, loss and damage.

WHEREFORE the Movant requests the automatic stay of Section 362 of the Bankruptcy Code be modified to permit Movant to proceed with a foreclosure action on the real property described herein, and that Movant be granted such other and further relief deemed just and proper.

MARK S. KESSLER, P.A.

By: /s/ Mark S. Kessler
MARK S. KESSLER, ESQUIRE
Florida Bar #258326
331 E. Union Street
Jacksonville, Florida 32202
Tel: (904) 350-0060
Fax: (904) 350-9906
Attorney for Movant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing together with all attachments thereto has been furnished to Bonita Nix Donovan, 800 Fla Boulevard, Neptune Beach, Florida 32266; Albert H. Mickler, Esquire and Bryan K. Mickler, Esquire, Attorneys for Debtor, 5452 Arlington Expressway, Jacksonville, Florida 32211; United States Trustee, 135 W. Central Boulevard #620, Orlando, Florida 32806; and all other parties on the attached mailing matrix by U.S. mail/electronic mail this 13th day of June, 2008.

                                                      /s/ Mark S. Kessler
                                                         Attorney

IN THE CIRCUIT COURT FOR
DUVAL COUNTY, FLORIDA

Case No. 2008 CA 000404

DANIEL J. WAHBY and ROBIN M. WAHBY,
husband and wife, and GERALD F.
FLETCHER, and BARBARA J. FLETCHER,
husband and wife

        Plaintiffs,

vs.

BONITA N. DONOVAN, a/k/a/ BONNIE
DONOVAN, and individual,

        Defendant.

## FINAL JUDGMENT OF FORECLOSURE

THIS CAUSE having come before the court on the Motion for Summary Final Judgment of Plaintiffs: Daniel J. Wahby and Robin M. Wahby whose address is 385 Royal Tern Road, South, Ponte Vedra Beach, Florida 32082 and Gerald F. Fletcher and Barbara J. Fletcher whose address is 3528 Ocean Drive, Jacksonville Beach, Florida 32250, and the court having considered the pleadings and proofs submitted, having reviewed the court file, and being otherwise fully advised in the premises, it is hereby

ORDERED and ADJUDGED as follows:

1.    The Defendant to this action and her address is as follows:

| Name: | Address: |
|---|---|
| Bonita Donovan | 800 Florida Blvd.<br>Neptune Beach, FL 32266 |

2.    Due and legal service of process has been made on Defendant. This court has jurisdiction of the parties in this cause and its subject matter. The allegations contained in the Complaint have been proved by competent evidence, and the equities in this cause are with Plaintiff.

3. The Mortgage Note sued on by Plaintiff in this cause constitutes a valid lien on the property described in Exhibit "A" attached hereto and the Mortgage is in default as alleged in the Complaint.

4. This Court finds that ~~7.0~~ *8.00* hours were expended in the prosecution of this case and a reasonable hourly rate is $~~1~~50.00. Therefore, $ *1200* is awarded to Plaintiffs as reasonable attorneys' fees for services rendered in this cause.

5. There is due to Plaintiff on the Mortgage and Note sued on, including foreclosure fees and costs, the following sums:

| | | |
|---|---|---|
| Principal due on the Note and Mortgage: | | $585,000.00 |
| Interest from November 2, 2007, to March 20, 2008, at the rate of 6% per annum, $96.16 per day: | | $13,366.24 |
| Late charges: | | $731.25 |
| Costs of lawsuit (as set out in Plaintiff's Affidavit of Costs filed herein): | | |
| Filing Fee | $255.00 | |
| Service of Process | $30.00 | |
| Mail Costs | ~~$14.51~~ | |
| Title Search | ~~$450.00~~ *150.00* | |
| | Total | $749.51 |
| Attorneys' fees: | | $ *1200.00* |
| Guardian Ad Litem/Attorney Ad Litem/Administrator Ad Litem fees: | | $0 |
| Taxes for 2006 and 2007 | | $12,602.65 |
| TOTAL DUE | | $ *625,937.79* |

plus interest at the rate of 6% per annum or the Note rate, whichever is less, from the date of this

Judgment until paid, and any further sums in connection herewith.

6. Plaintiff holds a lien to secure the payment of the total sum in and to the property described in Exhibit "B" attached hereto. This lien is prior, paramount, and superior to all rights, claim, liens, interest, encumbrances, and equities of Defendant and all persons, firms, or corporations claiming by, through, or under Defendant, and the property will be sold free and clear of all claims of Defendant.

7. If the total sum due, with interest at the rate prescribed by law, and all costs of this action accruing subsequent to this Judgment are not paid, the clerk of this court shall sell the property at public sale, on April 14, 2008 (a date not less that 20 days after the date of this Judgment), to the highest bidder or bidders for cash, except as set forth hereinafter, at the front door of the Duval County Courthouse, Jacksonville, Florida, in accordance with F.S. 45.031, except the clerk shall not conduct the sale unless Plaintiff or its representative is present to bid at the sale.

8. Plaintiff shall be reimbursed by the clerk for all costs advanced by Plaintiff should a party other than Plaintiff be the purchaser of the property at the sale. Any purchaser other than Plaintiff shall pay all service charges assessed by the clerk of the court under F.S. 28.24, together with proper documentary stamps to be affixed to the Certificate of Title. If Plaintiff is the purchaser, the clerk shall credit Plaintiff's bid with the total sum due hereunder with interest and costs accruing subsequent to this Judgment or the part of it as is necessary to pay the bid in full.

9. Any sums expended by Plaintiff for ad valorem taxes, hazard insurance, or property preservation also shall be credited to Plaintiff's bid. If Plaintiff is to include those sums in Plaintiff's bid, Plaintiff shall file an affidavit setting forth those expenditures.

10. On filing the Certificate of Title, the clerk shall distribute the proceeds of the sale and other money collected by the clerk in connection with the sale, so far as they are sufficient, by paying: first, all of Plaintiff's costs; second, documentary stamps affixed to the Certificate; third, Plaintiff's attorneys' fees; and fourth, the total sum due to Plaintiff plus interest at the rate prescribed by law from this date to the date of the sale; and by retaining any amount remaining pending the further order of this court.

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NOT

LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

11. The sale shall be held in accordance with F.S. 45.031, and, when the clerk files the Certificate of Sale, all persons shall forever be barred and foreclosed of any and all equity or right of redemption in and to the above-described property. Furthermore, when the clerk files the Certificate of Title as provided by F.S. 45.031, the sale shall stand confirmed, and the purchasers at the sale, their heirs, representatives, successors, or assigns without delay, shall be let into possession of the premises as conveyed. The clerk of the court is specifically authorized to issue a Writ of Possession for the premises located at The south 55 feet of Lot 8, Block 42, Pablo Beach South, according to plat thereof as recorded in Plat Book 3, page 28, of the current public records of Duval County, Florida, and the sheriff is authorized to serve the Writ of Possession immediately after issuance of the Certificate of Title.

12. This court retains jurisdiction of this cause for the purpose of making any and all further orders as may be necessary and proper, including, without limitation, Writs of Possession and Deficiency Judgment.

DONE and ORDERED, in chambers, at Jacksonville, Duval ORDER ENTERED on March 20, 2008

MAR 20 2008

/s/ Peter J. Fryefield
Peter J. Fryefield
Circuit Judge

Copies furnished to:
C. Randolph Coleman
Bonita Donovan
Daniel and Robin Wahby
Gerald and Barbara Fletcher

# MORTGAGE NOTE

Loan Amount: $585,000.00

Date: September 2, 2005

For value received, the undersigned Bonnie Donovan, ("Maker") promise to pay to the order of Daniel J. Wahby and Robin M. Wahby, husband and wife, and Gerald F. Fletcher and Barbara J. Fletcher, husband and wife (collectively, "Holder") the principal sum of Five Hundred Eighty Five Thousand and No/100 Dollars (U.S. $585,000.00) with interest thereon at the rate of 6.0% per annum from date until maturity, said interest being payable as stated herein, both principal and interest being payable in lawful money of the United States of America by electronic transfer to accounts designated by Daniel J. Wahby and Robin M. Wahby, husband and wife, and Gerald Fletcher and Barbara Fletcher, husband and wife, or at such other address as the holder from time to time may specify by written notice to the Maker, said principal and interest to be paid on the date and in the manner following:

In consecutive installments of $2,925.00 each, commencing on October 2, 2005, and continuing in a like amount, until September 2, 2008, when the remaining principal balance of $585,000.00 and interest of $2,925.00 shall be due and payable. Each installment shall first be applied to payment of the accrued interest and the remainder, if any, shall be applied to payment of the principal from time to time remaining unpaid.

In the event Maker shall prepay any portion of the principal, then the interest only payment shall be adjusted to reflect the new principal balance.

Privilege is reserved herein to prepay in whole or in part at any time without penalty or fee.

The maker(s) agree herein to pay to the holder(s) hereof, a late charge/penalty of 5 % on any installment not paid within 10 days after the installment is due.

This note is to be construed and enforced according to the laws of the State of Florida, and is secured by a mortgage on real estate of even date herewith.
If default be made in the payment of any of said sums or interest or in the performance of any agreements contained herein or in the said mortgage then, at the option of the holder of the same, the principal sum then remaining unpaid with accrued interest shall immediately become due and collectible without notice, time being of the essence of this contract, and said principal sum and said accrued interest shall both bear interest at the maximum rate per annum allowed by law, from such time until paid.
Each maker and endorser waives presentment, protest, notice of protest and notice of dishonor and agrees to pay all costs, including a reasonable attorney's fee, whether suit brought or not, if counsel shall, after maturity of this note or default hereunder or on said mortgage, be employed to collect this note or to protect the security thereof.

Documentary tax has been paid and proper stamps have been affixed to the Mortgage.

_____
Bonnie Donovan

EXHIBIT __A__

09/06/2005 at 04:25 P  JIM FULLER CLERK CIRCUIT COURT DUVAL CNTY RECORDING
$44.00 MORTGAGE DOC S  $2047.50  INTANGIBLE TAX $1170.00

THIS INSTRUMENT PREPARED BY:
Patterson, Bond & Latshaw, P.A.

3010 South 3rd Street
Jacksonville Beach, FL 32250

RECORD AND RETURN TO:
Patterson, Bond & Latshaw, P.A.
3010 South 3rd Street
Jacksonville Beach, FL 32250

# MORTGAGE

This Mortgage ("Security Instrument") is given this 2nd day of September, 2005. The Mortgagor is Bonnie Donovan, a single woman, whose address is , 135 20th Avenue So., Jacksonville Beach, Florida 32250, hereinafter called the Borrower. This Security Instrument is given to Daniel J. Wahby and Robin M. Wahby and Gerald F. Fletcher and Barbara J. Fletcher whose address is 385 Royal Tern Rd. S., Ponte Vedra Beach, FL 32082 hereinafter called the Lender. Borrower owes Lender the principal sum of Five Hundred Eighty Five Thousand and No/100 Dollars ($585,000.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), a true and correct copy of which is attached and made a part hereof. If not paid earlier, this debt is due and payable on September 2, 2008.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in Duval County, Florida:

The South 55 feet of Lot 8, Block 42, PABLO BEACH SOUTH, according to plat thereof as recorded in Plat Book 3, page 28, of the current public records of Duval County, Florida.

which has the address of xxx First Street So., Jacksonville Beach, FL 32250:

Together With all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property, including, whether attached or detached, all elevators, all gas, steam, electric or other heating, lighting, plumbing, ventilating, sprinkling, irrigating, water and power systems, appliances, storm and screen windows and doors, fixtures and apparatus. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower Covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower fully warrants and will defend generally the title to the Property against all claims and demands of all persons whomsoever, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

Application of Payments. Unless applicable law provides otherwise, all payments received by Lender shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under this Security Instrument for escrow items, if applicable; fourth, to Interest due; and last, to principal due.

Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided for payment of escrow items, if applicable, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment.

Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

 EXHIBIT B

 5

Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance
shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of any payments referred to in the Note or this Security Instrument or change the amount of the payments. If, after default, the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect the Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned
and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of any payments referred to in the Note or in this Security Instrument or change the amount of such payments.

Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time for payment or modification of amount or the term for repayment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify the term for repayment of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

Due On Sale. In the event the mortgagor should transfer, assign or convey any interest in the property mortgaged herein, then the entire principal balance and accrued interest shall become immediately due and payable, unless mortgagee shall consent to the assignment or transfer in writing.

Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to any rights of Lender to require immediate payment in full of all sums secured by this Security Instrument. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note:
(a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

Legislation Affecting Lender's Rights. If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by the Note or this Security Instrument.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

Governing Law Severability. This Security Instrument shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

Acceleration; Remedies. Should Borrower breach any covenant or agreement in this Security Instrument, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Security Instrument, including, but not limited to, costs of abstracts, appraisals, surveys, testing of any nature, repairs, replacements, insurance, environmental assessments, appraisals, tests and remedial action, title searches, title correction, and reasonable attorneys' fees and costs of title evidence.

Lender in Possession. Upon acceleration by Lender or abandonment of the Property, Lender (by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

Attorneys' Fees. As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court, including fees incurred in a Bankruptcy proceeding initiated by the mortgagor.

Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

By Signing Below, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____
Witness   DEBRA C. McGEACHY                Bonnie Donovan

_____
Witness   JESSICA J. KAPKE

STATE OF Florida
COUNTY OF Duval

The foregoing instrument was acknowledged before me this 2nd day of September, 2005 by Bonnie Donovan. He/She/They have produced _____ as identification.

_____
Notary Public, State and County Aforesaid

Notary Public

JESSICA JO KAPKE
MY COMMISSION # DD 157511
EXPIRES: October 10, 2006
Bonded Thru Notary Public Underwriters

My commission expires:

| DONOVAN BONNIE | Primary Site Address | Official Record Book/Page | Tile # |
|---|---|---|---|
| 135 20TH AV SOUTH | 0 | 12736-2471 | 9433 |
| JACKSONVILLE BEACH, FL 32250 | Jacksonville Beach FL 32250 | | |

0

Property Detail

| RE # | 175880-0000 |
|---|---|
| Tax District | USD2A |
| Property Use | 0000 VACANT RES |
| # of Buildings | 0 |
| Legal Desc. | 3-28 33-2S-29E PABLO BEACH SOUTH |
| Subdivision | 03201 PABLO BEACH SOUTH |

Value Summary

| | 2007 Certified | 2008 In Progress |
|---|---|---|
| Value Method | CAMA | CAMA |
| Building Value | $0.00 | $0.00 |
| Extra Feature Value | $0.00 | $0.00 |
| Land Value (Market) | $223,300.00 | $223,300.00 |
| Land Value (Agric.) | $0.00 | $0.00 |
| Just (Market) Value | $414,700.00 | $223,300.00 |
| Assessed Value (A10) | $223,300.00 | $223,300.00 |
| Exempt Value | $0.00 | $0.00 |
| Taxable Value | $223,300.00 | $223,300.00 |
| Senior Exemption | $0.00 | $0.00 |
| Senior Taxable | $0.00 | $0.00 |



JaxGIS Map map this property

The sale of this property may result in higher property taxes. For more information go to Save Our Homes and our Property Tax Estimator . Property values, exemptions and other information listed as 'In Progress' are subject to change. These numbers are part of the 2008 working tax roll and will not be certified until October. Learn how the Property Appraiser's Office values property.

**Sales History**

| Book/Page | Sale Date | Sale Price | Deed Instrument Type Code | Qualified/Unqualified | Vacant/Improved |
|---|---|---|---|---|---|
| 12736-2471 | 9/2/2005 | $685,000.00 | WD - Warranty Deed | Unqualified | Vacant |
| 09962-1908 | 4/12/2001 | $260,000.00 | WD - Warranty Deed | Qualified | Vacant |
| 09820-0173 | 12/4/2000 | $130,000.00 | WD - Warranty Deed | Unknown | Vacant |
| 05968-1004 | 5/28/1985 | $62,500.00 | WD - Warranty Deed | Unknown | Vacant |
| 03100-0339 | 4/24/1970 | $4,800.00 | MS - Miscellaneous | Unknown | Vacant |

**Extra Features**
No data found for this section

**Land & Legal**

Land

| LN | Code | Use Description | Zoning | Front | Depth | Category | Land Units | Land Value |
|---|---|---|---|---|---|---|---|---|
| 1 | 0100 | RES LD 3-7 UNITS PER AC | JRM-2 | 55.00 | 75.00 | Common | 55.00 | $223,300.00 |

Legal

| LN | Legal Description |
|---|---|
| 1 | 3-28 33-2S-29E |
| 2 | PABLO BEACH SOUTH |
| 3 | S 55FT LOT 8 BLK 42 |

**Buildings**
No data found for this section

**Notice of Proposed Property Taxes (Truth in Millage Notice)**

| Taxing District | Base | Add'l Exemptions | Taxable Value | Last Year | Proposed | Rolled-back |
|---|---|---|---|---|---|---|
| General Gov Voted | $414,700.00 | $0.00 | $414,700.00 | $0.00 | $0.00 | $0.00 |
| Public Schools: By State Law | $414,700.00 | $0.00 | $414,700.00 | $2,048.62 | $2,023.32 | $1,853.71 |
| By Local Board | $414,700.00 | $0.00 | $414,700.00 | $1,144.57 | $1,130.06 | $1,035.67 |
| School Board Voted | $414,700.00 | $0.00 | $414,700.00 | $141.83 | $62.62 | $62.62 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Gen Govt USD2,2A,2B,3,4 | $414,700.00 | $0.00 | $414,700.00 | $2,633.05 | $2,153.70 | $2,552.40 |
| Jax Bch USD2A | $414,700.00 | $0.00 | $414,700.00 | $0.00 | $0.00 | $0.00 |
| Jax Bch | $414,700.00 | $0.00 | $414,700.00 | $1,620.27 | $1,515.98 | $1,665.89 |
| Urban Service Dist2 | $414,700.00 | $0.00 | $414,700.00 | $0.00 | $0.00 | $0.00 |
| Water Mgmt Dist. SJRWMD | $414,700.00 | $0.00 | $414,700.00 | $191.59 | $172.43 | $177.74 |
| FL Inland Navigation Dist | $414,700.00 | $0.00 | $414,700.00 | $15.97 | $14.31 | $14.43 |
| | | | Totals | $7,795.90 | $7,072.42 | $7,362.46 |

| | Just Value | Assessed Value | Exemptions | Taxable Value |
|---|---|---|---|---|
| Last Year | $414,700.00 | $414,700.00 | $0.00 | $414,700.00 |
| Current Year | $414,700.00 | $414,700.00 | $0.00 | $414,700.00 |

**Property Record Card (PRC)**
The Property Appraiser Office provides available historical record cards (PRC). You must set your browser's Page Set Up for printing to Landscape to print these cards.
2005
2004
2003
2002
2001
2000
1999
1998
1997

**More Information**
Parcel Tax Record
GIS Map
Map this property on Google Maps

Label Matrix for local noticing
113A-3
Case 3:08-bk-02133-JAF
Middle District of Florida
Jacksonville
Fri Jun 13 17:51:54 EDT 2008

American Express Centurion Bank
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355-0701

Amex
Po Box 297871
Fort Lauderdale, FL 33329-7871

BANK OF AMERICA, NA
475 CROSS POINT PARKWAY
P.O. BOX 9000
GETZVILLE, NY 14068-9000

Bank Of America
4161 Piedmont Pkwy
Greensboro, NC 27410-8110

Bank Of America
475 Crosspoint Pkwy
Getzville, NY 14068-1609

Bank Of America
Pob 17054
Wilmington, DE 19884-0001

Bank of America N.A.
475 CrossPoint Parkway
Post Office Box 9000
Getzville, New York 14068-9000

Bank of America, N.A.
c/o Brice, Vander Linden & Wernick, PC
475 Crosspoint Parkway
PO Box 9000
Getzville, NY 14068-9000

Chase
800 Brooksedge Blvd
Westerville, OH 43081-2822

Countrywide Home Loans
450 American St
Simi Valley, CA 93065-6285

Daniel and Robin Wahby
Gerald and Barbara Fletcher
c/o C. Randolph Coleman, Esq
9250 Baymeadows Rd. #450
Jacksonville, FL 32256-1896

Bonita Nix Donovan
800 Fla. Blvd.
Neptune Beach, FL 32266

Gilbert Weisman
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355-0701

Hfc
Po Box 1547
Chesapeake, VA 23327-1547

Hsbc Bank
Po Box 5253
Carol Stream, IL 60197-5253

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Premier Properties Realty
378 A1A Beach Blvd.
Saint Augustine, FL 32080-5944

Recovery Management Systems Corporation
25 S.E. Second Avenue
Suite 1120
Miami, FL 33131-1605

Recovery Management Systems Corporation
For GE Money Bank
25 SE 2nd Ave Ste 1120
Miami, FL 33131-1605

Shell/Citi
Po Box 6497
Sioux Falls, SD 57117-6497

South Beach Townhomes
173 20th Ave.
Jacksonville Beach, FL 32250-6128

Thd/Cbsd
Po Box 6497
Sioux Falls, SD 57117-6497

United States Trustee - JAX
135 W. Central Blvd, Suite 620
Orlando, FL 32801-2440

Usaa Federal Savings B
Po Box 47504
San Antonio, TX 78265-7504

          The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
          by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
400 W. Bay St.
2nd Floor
Jacksonville, FL 32202

End of Label Matrix
Mailable recipients    24
Bypassed recipients     0
Total                  24