UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

BONITA N. DONOVAN,

      Debtor.

CASE NO. 3:08-bk-2133

Chapter 11

## COUNTRYWIDE HOME LOAN'S OBJECTION TO CONFIRMATION

Countrywide Home Loans, Inc. ("Countrywide"), by and through its undersigned counsel, and pursuant to 11 U.S.C. §§ 1128 and 1129, as well as F.R.B.P. 9014, hereby files its Objection to Confirmation of the Debtor's Amended Plan of Reorganization filed on or about April 18, 2008 (the "Plan") by Bonita N. Donovan, Debtor (the "Debtor"), and in support thereof, states as follows:

## BACKGROUND

1.      On April 18, 2008 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.      Countrywide holds first mortgages on the following two pieces of real property: (i) 800 Florida Blvd., Neptune Beach, Florida (the "Neptune Beach Property"); and (ii) 150 Pantano Cay Blvd., St. Augustine, Florida (the "St. Augustine Property") (collectively, the "Properties").

### A. Neptune Beach Property Mortgage/Note

3. On or about May 16, 2006, the Debtor entered into a first mortgage for the Debtor's residence (the "Neptune Beach Mortgage") and note (the "Neptune Beach Note")(collectively, the "Neptune Beach Mortgage and Note") with Countrywide.

4. Pursuant to the Neptune Beach Mortgage and Note, the Debtor owed Countrywide principal of $646,000.00, plus interest, to be paid in full by June 1, 2036.

5. The Neptune Beach Note provided for a yearly interest rate of 7.625%, which changes to an adjustable interest rate on June 1, 2011.

6. The Neptune Note also provides for late charges of 5% of overdue payments.

### B. St. Augustine Property Mortgage/Note

7. On or about April 12, 2007, the Debtor entered into a first mortgage (the "St. Augustine Mortgage") and note (the "St. Augustine Note")(collectively, the "St. Augustine Mortgage and Note") with Countrywide.

8. Pursuant to the St. Augustine Mortgage and Note, the Debtor owed Countrywide principal of $400,000.00, plus interest, to be paid in full by May 1, 2037.

9. The St. Augustine Note provided for a yearly interest rate of 9.250%, and monthly payments of $3,083.33 until May 1, 2012, at which time the interest rate will adjust.

10. The St. Augustine Note also provides for late charges of 5% of overdue payments.

11. On or about April 18, 2008, the Debtor filed its Plan. The Plan proposes to impair Countrywide's claims, classified as Class 2 (Neptune Beach) and Class 3 (St. Augustine).

12. Countrywide objects to the treatment of the Properties, as set forth below.

### C. The Debtor's Proposed Treatment of Countrywide's Claim 2 Under the Plan

13. As of the Petition Date, the Debtor listed Countrywide as holding a secured claim on the Neptune Beach Property (Class 2) in the amount of $645,813.00.

14. The Plan proposes to impair Countrywide's mortgage by fixing and reducing its claim to $450,156.00. The Debtor does not explain how it arrives at this significantly reduced figure. The Plan proposes to pay this "valuation amount" with a reduced interest rate of 6% over 30 years.

**D. The Debtor's Proposed Treatment of Countrywide's Claim 3 Under the Plan**

15. As of the Petition Date, the Debtor listed Countrywide as holding a secured claim on the St. Augustine Property (Class 3) in the amount of $400,000.00.

16. The Plan proposes to impair Countrywide's mortgage by fixing and reducing its claim to $110,000.00. The Debtor does not explain how it arrives at this significantly reduced figure. The Plan proposes to pay this "valuation amount" with a reduced interest rate of 6% over 30 years.

## ARGUMENT

17. The Debtor' Plan is not confirmable under 11 U.S.C. § 1129(a)(1), (3), (7) and 11 U.S.C. § 1129(b)(2)(A), and therefore, confirmation should be denied.

**A. The Plan Was Not Proposed in Good Faith**

18. According to 11 U.S.C. § 1129(a)(3), a plan can only be confirmed if, "[t]he plan has been proposed in good faith and not by any means forbidden by law."

19. As stated above, Countrywide holds a secured claim on the Neptune Beach Property in the amount of $645,813.00, and on the St. Augustine Property in the amount of $400,000.00. The Plan proposes to reduce these claims to $450,156.00 and $110,000.00,

respectively, however does not explain how these values were chosen and no appraisals were attached to the Debtor's Disclosure Statement. According to the Broker's Price Opinions ("BPO"), the market value for the Neptune Beach Property is between $550,000.00 and $587,000.00, and the market value for the St. Augustine Property is between $369,000.00 and $377,000.00. Both of these values are much higher than the values attributed by the Debtor.

20. Based upon the drastic and seemingly unjust reduction of the value of the Properties and Countrywide's claim, it appears that the Debtor filed mainly to create the automatic stay and that the purpose of this Plan is to frustrate the legitimate rights of secured creditors to enforce their mortgages, and to adjust and modify the rights of those secured creditors.

21. Absent justification of Debtor's proposed valuations, this is not a "good faith" purpose allowable under the Bankruptcy Code. *See e.g., Matter of Hamilton*, 51 B.R. 550 (Bkrtcy.Fla.,1985)(Court held that a plan is not proposed in good faith if sole purpose of filing is to frustrate the right of a secured creditor to enforce a mortgage); *Matter of Stein*, 36 B.R. 521 (Bankr. M.D. Fla. 1983)(Court held that the plan which was designed by debtors for the purpose of adjusting and modifying the rights of secured creditors, secured solely by the principal residence of the debtors, and to frustrate their efforts to enforce their valid liens against the property in question would not be confirmed, and because the plan was not proposed in good faith, the case would be dismissed); *In re Investors Florida Aggressive Growth Fund, Ltd.*, 168 B.R. 760 (Bankr. N.D.Fla.,1994)("The Code is not to be viewed as an alternative to traditional refinancing by providing a vehicle for debtors to draft their own loans with existing creditors."). *See also, In re Krueger*, 66 B.R. 463 (Bankr. S.D.Fla.,1986)(proposed Chapter 11 plan for sale of debtor's sole asset, commercial building that was in default on mortgage, was inequitable and

had not been proposed in good faith, where plan essentially forced mortgagee to estimate current value of his security, and then proposed to place collateral on the market in hope that mortgagee had undervalued security and could, therefore, be compelled to subordinate its claim to inferior obligations of debtor.)

22. Accordingly, the Plan is barred from confirmation under 11 U.S.C. §1129(a)(3) which provides that a Chapter 11 plan will not be confirmed if the Plan has not been proposed in good faith. If the Plan is not, or cannot, be amended to comply with the "good faith" requirements, this Chapter 11 case should be dismissed or converted to a Chapter 7 proceeding.

**B.    Countrywide Will Receive Less Under the Plan Than It Would Under Chapter 7**

23. Countrywide objects to Debtor's Plan on the basis that it will receive or retain less than the amount that Countrywide would receive or retain if the Debtor were liquidated under a Chapter 7 bankruptcy proceeding. 11 U.S.C. § 1129(a)(7)(A)(ii) and 11 U.S.C. § 1129(a)(7)(B). *See e.g., In re Oliver*, 142 B.R. 486, 489 (Bkrtcy. M.D.Fla.1992)(Court held that the plan could not be confirmed because creditors would receive more in a Chapter 7 liquidation case than what was offered in the plan, in clear violation of § 1129(a)(7)(A)(ii)).

24. Under a Chapter 7 bankruptcy proceeding, Countrywide's secured claims would not be reduced and the Properties would be surrendered to Countrywide if the Debtor could not maintain its mortgage payments under the pre-petition loan documents.

25. Furthermore, Countrywide believes, based upon the valuation information referenced herein, that the Debtor's Plan undervalues the Properties.

26. Accordingly, Countrywide will receive or retain less than the amount that Countrywide would receive or retain if the Debtor were liquidated under a Chapter 7 bankruptcy proceeding.

27.     Accordingly, the Plan is barred from confirmation under 11 U.S.C. §1129(a)(7) which provides that a Chapter 11 plan will not be confirmed if an impaired claimant will receive less than it would had the debtor filed under Chapter 7.

### C.    The Plan is Not Fair and Equitable

28.     Additionally, Countrywide objects to Debtor' Plan on the basis that the Plan is not fair and equitable as required under 11 U.S.C. § 1129(b).

29.     One of the requirements for a plan to be fair and equitable is that the plan provide that a holder of secured claims receives payments totaling at least the value of such holder's interest in such property, or the indubitable equivalent of such claims. 11 U.S.C. § 1129(b)(2)(A). *See e.g., Immenhausen*, 172 B.R. at 350 (Court finding that "[t]here is hardly any question not only that the Plan as proposed is not fair and equitable but would not enable the [creditor] to realize the indubitable equivalent of its claim and would certainly not receive in the deferred cash payments totaling at least the allowed amount of its claim, both of which are requirements for cram-down under § 1129(b)(2)(A)(ii) and (iii)").

30.     As stated above, the Plan proposes to devalue the Properties and make payments at a reduced rate, for 30 years. The Plan's proposed "valuation amounts" are not equivalent to Countrywide's claims or to the market value of the Properties. Accordingly, Countrywide objects to the Debtor's "valuation amounts", the reduced interest rate and the 30 year amortization.

31.     Furthermore, the reduced interest rate proposed does not provide Countrywide with the present value of its secured claim.

32.     The amounts Countrywide should receive under the Plan, if the Plan is to be confirmed, should be valued as of the effective date of the Plan. In determining whether or not

the provision for the payment of an allowed secured claim is fair and equitable, if the payments will be deferred payments, it is necessary to determine the value Countrywide is to receive over the life of the Plan. The requirement of payments with a value as of the effective date requires interest to offset the fact that payments are made over time, not upon the effective date of the Plan. The Debtor did not consider the time value of the money, which she is required to do. *See Immenhausen.*, 172 B.R. at 350 (Court explained that "[t]he present value or the market rate of interest must be determined with reference to the similar terms, duration, the collateral and the risk to the lender. *In re Southern States Motor Inns, Inc.,* 709 F.2d 647 (11th Cir.1983); *In re Birdneck Apartment Associates, II, L.P., supra; In re Ropt Ltd. Partnership,* 152 B.R. 406 (Bankr.D.Mass.1993); *In re Pinebrook, Ltd.,* 85 B.R. 160 (Bankr.M.D.Fla.1988).").

33. Based on the foregoing, the Plan as proposed is not fair and equitable and does not protect Countrywide's interest in the Properties as it does not provide Countrywide with payments totaling the value of its claim, or the indubitable equivalent of its claim. Accordingly, the Plan is barred from being confirmed.

**D.   The Plan Violates the Absolute Priority Rule**

34. The standard for "fair and equitable" encompasses the judicially created absolute priority rule, which has been defined as follows:

> The absolute priority rule, in its simplest terms, requires that a creditor of a debtor in bankruptcy reorganization receive payment of their claim in their established order of priority, and that they receive payment in full before lesser interests-such as those of equity holders-may share in the assets of the reorganized entity.

*In re Immenhausen Corp.*, 172 B.R. 343, 350 (Bkrtcy. M.D.Fla.1994)

35. The Debtor's Plan violates the absolute priority rule because the Debtor retains the Properties (without providing new value) while Countrywide's secured claim remains unpaid

and unsatisfied under the Plan. *See e.g In re Johnson*, 101 B.R. 307 (Bankr. M.D. Fla. 1989)(Court held that the plan violated the absolute priority rule because the debtors will retain ownership in their real estate holding, stating that the plan could not be confirmed unless the debtors are able to come within the exception of the absolute priority rule by infusing new capital, equivalent in value to the value of the property they are retaining); *In re Immenhausen Corp.*, 172 B.R. at 351 (Bkrtcy. M.D.Fla.1994).

36. Accordingly, the Plan may not be confirmed.

**WHEREFORE,** Countrywide respectfully requests this Honorable Court to enter an Order denying confirmation of the Debtor' Chapter 11 Plan of Reorganization, and granting such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via U.S. Mail and/or by electronic mail on the 30th of September, 2008, to the following parties:

Bonita Nix Donovan
800 Fla. Blvd.
Neptune Beach, FL  32266

Albert H. Mickler, Esq.
5452 Arlington Expressway
Jacksonville, FL  32211

United States Trustee JAX
135 W. Central Blvd., Suite 620
Orlando, FL  32801

ADORNO & YOSS LLP

_____
Gregg S. Ahrens, Esq.
Florida Bar No. 352837
2525 Ponce De Leon Boulevard, Suite 400
Miami, FL  33134
Telephone:   (305) 460-1020
Facsimile:   (305) 460-1422

{M1745923_1}                                                9