UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 08-02133-JAF
CHAPTER 11 CASE

IN RE:

BONITA NIX DONOVAN
*AKA* BONNIE N. DONOVAN

Debtor.

_____/

**MOTION FOR RELIEF FROM STAY**

     COMES NOW Movant, **BANK OF AMERICA, N.A.** a secured creditor second mortgage holder**,** by and through its undersigned counsel, and respectfully moves this Court pursuant to 11 U.S. Code Section 362(d) of the Bankruptcy Code to grant relief from stay and require Debtor(s) to provide adequate protection to Movant and as grounds and in support thereof would show the following:

1.    Payments under the note and mortgage are due on the first (1st) day of each month until maturity of the note. Pursuant to that Chapter 11 Plan of the Debtor(s) which has NOT been confirmed by this Court, **the Debtor(s) were to make their post-petition payments directly to your Movant.**

2.    Debtor(s) have failed to make their post-petition payments pursuant to the provisions of the subject note and mortgage as set forth on the attached affidavit in support of Motion for Relief from Stay. The Debtor(s) are in default of the regular monthly post-petition mortgage payments for the month of August, 2007 and all months thereafter.

3.    Movant/Claimant is the owner and holder of a promissory note and mortgage securing certain real property owned by Debtor(s) in DUVAL County, FLORIDA described as: See attached Exhibit A

        **UNIT 1, SOUTH BEACH TOWNHOMES, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM AS RECORDED IN OFFICIAL RECORDS VOLUME 8386, PAGE 782, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA, TOGETHER WITH AN UNDIVIDED ONE-FORTH INTREST IN THE COMMON**

08-48203

**ELEMENTS AS DEFINED AND DESCRIBED IN THE SAID DECLARATION OF CONDOMINIUM.**

A/K/A: 135 N 20TH AVENUE, JACKSONVILLE BEACH, FL 32250

4. Debtor(s) is in default upon the subject mortgage for the payment due on August 30, 2007 and Secured Creditor is owed an approximate principal balance of $90,327.64. See Exhibit B attached.

5. According to the Broker Property Analysis and Value, the market value of the property is $449,000.00 See Exhibit C attached.

6. Pursuant to Debtor's Schedule D, there are additional mortgages on the subject propwerty in excess of $590,000.00.

7. It is upon belief that said subject property has not been claimed as exempt by the Debtor(s), therefore, it is not necessary to an effective reorganization by Debtor(s).

8. Movant seeks the award of $800.00 in Bankruptcy fees and costs for the prosecution of this Motion.

9. **BANK OF AMERICA, N.A.** requests that the ten (10) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001 (a)(3) be waived so that it can pursue its in rem remedies without further delay.

WHEREFORE, Movant, **BANK OF AMERICA, N.A.** moves this Court to enter its order granting relief from stay or requiring Debtor(s) to provide adequate protection to Movant and that the ten (10) day stay of the of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3) is waived so that **BANK OF AMERICA, N.A.** can pursue its in rem remedies without further delay or requiring the Debtor to provide adequate protection to the Movant and award bankruptcy fees and cost of $800.00 and granting such other relief as to the Court may deem just and proper.

08-48203

I HEREBY CERTIFY that a true and correct copy of the attached mailing list and to all unsecured Creditor's under Rule 1007 (d) by First Class U.S. Mail postage prepaid Motion for Relief from Stay and attachments were delivered to the addressees on the attached mailing list by First Class U.S. mail postage pre-paid **and/or electronic mail** this _10_ day of _August_ 2009.

Law Offices of Marshall C. Watson, P.A.
1800 N.W. 49TH Street, Suite 120
Fort Lauderdale, FL 33309
Telephone: (954) 453-0365/1-800-441-2438
Facsimile: (954) 689-3517
scott.weiss@marshallwatson.com

By:_____
Scott Weiss, Esq.
Bar Number: 710910

Mailing List:

BONITA NIX DONOVAN
*AKA* BONNIE N. DONOVAN
800 FLA. BLVD.
NEPTUNE BEACH, FL 32266

ALBERT H. MICKLER
5452 ARLINGTON EXPRESSWAY
JACKSONVILLE, FL 32211

BRYAN K. MICKLER
5452 ARLINGTON EXPRESSWAY
JACKSONVILLE, FL 32211

ELENA L ESCAMILLA
UNITED STATES TRUSTEE
135 W CENTRAL BLVD SUITE 620
ORLANDO, FL 32806

UNITED STATES TRUSTEE - JAX, 11
135 W CENTRAL BLVD, SUITE 620
ORLANDO, FL 32801

08-48203

Label Matrix for local noticing
113A-3
Case 3:08-bk-02133-JAF
Middle District of Florida
Jacksonville
Mon Aug  3 10:21:36 EDT 2009

Bank Of America N.A.
475 Crosspoint Pkwy
P.O.Box 9000
Getzville, NY 14068-9000

Bank of America Mortgage
c/o Frederic J DiSpigna Esq
900 S Pine Island Road Suite 400
Plantation, FL 33324-3920

Bank of America NA
Law Offices of Marshall C. Watson, PA
1800 NW 49th Street, Suite 120
Fort Lauderdale, FL 33309-3092

Bank of America, N.A.
c/o David E. Hicks, Esq.
P.O. Box 707
Tampa, FL 33601-0707

Bank of America, NA
475 Cross Point Parkway
Getzville, NY 14068-1609

Countrywide Home Loans, Inc.
c/o Gregg S. Ahrens, Esq.
Adorno & Yoss LLP
2525 Ponce de Leon Blvd., Suite 400
Miami, FL 33134-6044

Recovery Management Systems Corporation
25 S.E. Second Avenue
Suite 1120
Miami, FL 33131-1605

Roundup Funding LLC
MS 550
Post Office Box 91121
Seattle, WA 98111-9221

USAA Federal Savings Bank
c/o Dennis J LeVine, Esq
PO Box 707
Tampa, FL 33601-0707

United States Trustee - JAX 11
135 W Central Blvd, Suite 620
Orlando, FL 32801-2440

United States Bankruptcy Court
300 North Hogan Street Suite 3-350
Jacksonville, FL 32202-4267

Accelerated Receivable
3219 Atlantic Blvd
Jacksonville, FL 32207-8901

American Express Centurion Bank
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355-0701

Amex
Po Box 297871
Fort Lauderdale, FL 33329-7871

Bank Of America
4161 Piedmont Pkwy
Greensboro, NC 27410-8119

Bank Of America
475 Crosspoint Pkwy
Getzville, NY 14068-1609

Bank Of America
Pob 17054
Wilmington, DE 19884-0001

Bank of America
c/o David Hicks
Dennis Levine & Assoc.
PO Box 707
Tampa, FL  33601-0707

Bank of America N.A.
475 CrossPoint Parkway
Post Office Box 9000
Getzville, New York 14068-9000

Bank of America NA
c/o Scott Weiss
1800 NW 49th Street, Suite 120
Fort Lauderdale, FL 33309-3092

Bank of America, N.A.
PO Box 26012
NC4-105-03-14
Greensboro, NC 27420-6012

Bank of America, N.A.
c/o Brice, Vander Linden & Wernick, PC
475 Crosspoint Parkway
PO Box 9000
Getzville, NY 14068-9000

CHASE BANK USA
C O Weinstein And Riley, PS
2001 Western Avenue, Ste 400
Seattle, Wa 98121-3132

Chase
800 Brooksedge Blvd
Westerville, OH 43081-2822

Chase Bank USA
c/o Weinstein and Riley
PO Box 3978
Seattle, WA  98124-3978

Citi
Po Box 6241
Sioux Falls, SD 57117-6241

City of Jacksonville
General Counsel
117 West Duval Street, Suite 480
Jacksonville, FL 32202-3734

Countrywide Home Loans
450 American St
Simi Valley, CA 93065-6285

Daniel J. Wahby, Robin M. Wahby, Gerald F. F
c/o C. Randolph Coleman, Esquire
9250 Baymeadows Road #450
Jacksonville, Florida 32256-1896

Daniel and Robin Wahby
Gerald and Barbara Fletcher
c/o C. Randolph Coleman, Esq
9250 Baymeadows Rd. #450
Jacksonville, FL 32256-1896

FIA CARD SERVICES, N.A.
Attn: Mr. M-BK
1000 Samoset Drive
DE5-023-03-03
Newark, DE 19713-6000

Fac/Nab
480 James Robertson Pkwy
Nashville, TN 37219-1212

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

Francine Landau
3219 Atlantic blvd
Jax fl 32207-8901

Gilbert Weisman
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355-0701

HTS Loan Servicing
450 Carillon Parkway
Suite 210
St. Petersburg, FL 33716-1209

Hfc
Po Box 1547
Chesapeake, VA 23327-1547

Household Receivable Acquisition Corp II
HSBC Bank USA N.A.
PO Box 5216
Carol Stream, IL 60197-5216

Hsbc Bank
Po Box 5253
Carol Stream, IL 60197-5253

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Jacksonville Orthopedic Institute
c/o Francine Landau
1325 San Marco Blvd.
Jacksonville, FL 32207-8568

Joe M. Lozano, Jr.
PO Box 829009
Dallas, TX 75382-9009

Premier Properties Realty
378 A1A Beach Blvd.
Saint Augustine, FL 32080-5944

Recovery Management Systems Corporation
For GE Money Bank
25 SE 2nd Ave Ste 1120
Miami, FL 33131-1605

Secretary of the Treasury
15th & Pennsylvania Ave., NW
Washington, DC 20220-0001

Sentry Management HOA
22180 W SR 434
#5000
Longwood, FL 32779

Sentry Management HOA
2980 Hartley Road West
#4
Jacksonville, FL 32257-8202

Shell/Citi
Po Box 6497
Sioux Falls, SD 57117-6497

South Beach Townhomes
173 20th Ave.
Jacksonville Beach, FL 32250-6128

Tax Collector, Duval County
231 E. Forsyth Street, #130
Jacksonville, FL 32202-3380

Thd/Cbsd
Po Box 6497
Sioux Falls, SD 57117-6497

The Estuaries at Crescent Beach Condo Assn,
c/o Becker & Poliakoff
2500 Maitland Center Parkway, Suite 209
Maitland, FL 32751-4174

U.S. Securities & Exchange Commission
Reorganization Branch, Atlanta
3475 Lenox Rd., NE, Ste. 1000
Atlanta, GA 30326-3235

USAA
c/o Dennis LeVine
P.O. Box 707
Tampa, FL 33601-0707

USAA FEDERAL SAVINGS BANK
C O Weinstein And Riley, PS
2001 Western Avenue, Ste 400
Seattle, Wa 98121-3132

United States Attorney
300 North Hogan St Suite 700
Jacksonville, FL 32202-4204

Usaa Federal Savings B
Po Box 47504
San Antonio, TX 78265-7504

Usaa Savings Bank
Po Box 47504
San Antonio, TX 78265-7504

Windward Pointe II, LLC
c/o HTS Loan Servicing, Inc.
450 Carillon Parkway, Suite 210
St. Petersburg, FL 33716-1209

Albert H. Mickler
5452 Arlington Expressway
Jacksonville, FL 32211-6800

Bonita Nix Donovan
800 Fla. Blvd.
Neptune Beach, FL 32266

Bryan K. Mickler
5452 Arlington Expressway
Jacksonville, FL 32211-6860

Daniel Wahby, et al
c/o C. Randolph Coleman, Esq.
9250 Baymeadows Road, Suite 450
Jacksonville, FL 32256-1896

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

IRS
400 W Bay St
Stop 5720-GRP 2
Jacksonville, FL 32202-4437

(d)Internal Revenue Service
400 W. Bay St.
2nd Floor
Jacksonville, FL 32202

(d)Internal Revenue Service
PO Box 21126
Philadelphia, PA 19114

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Estuaries at Cresent Beach Condominium Ass

(d)Bank of America Mortgage
c/o Frederic J DiSpigna Esq
900 S Pine Island Road Suite 400
Plantation FL 33324-3920

(d)Bank of America N.A.
475 Crosspoint Pkwy
P.O. Box 9000
Getzville, NY 14068-9000

(d)Bank of America N.A.
475 Crosspoint Pkwy
P.O. Box 9000
Getzville, NY 14068-9000

(d)Roundup Funding, LLC
MS 550
PO Box 91121
Seattle, WA 98111-9221

End of Label Matrix
Mailable recipients    63
Bypassed recipients     5
Total                  68

Doc# 2004376693
Book: 12166
Pages: 1504 - 1513
Filed & Recorded
    11/27/2004  12:28:21 PM
JIM FULLER
CLERK CIRCUIT COURT
DUVAL COUNTY
RECORDING       $   41.00
TRUST FUND      $    5.50
MORTGAGE DOC ST $  358.05
INTANGIBLE TAX  $  204.41
REC ADDITIONAL  $   40.00

**WHEN RECORDED MAIL TO:**
Bank of America Consumer Collateral Tracking
FL9-700-04-10
9000 Southside Blvd, Bldg 700
Jacksonville, FL 32256

---

This Mortgage prepared by:

Name: KIMBERLY S POWELL
Company: Bank of America, N.A.
Address: 830 CENTRAL AVE., ST PETERSBURG, FL 33701-0000

---

## MORTGAGE

**THIS MORTGAGE** dated November 10, 2004, is made and executed between **BONITA N DONOVAN, AN UNMARRIED PERSON, WHOSE ADDRESS IS 135 20TH AVE S. JACKSONVILLE BEACH, FL 32250** (referred to below as "Grantor") and **Bank of America, N.A.**, whose address is Bank of America Plaza, P.O. Box 31590, Tampa, FL 33631 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in DUVAL County, State of Florida:

**See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.**

The Real Property or its address is commonly known as **135 20TH AVE S, JACKSONVILLE BEACH, FL 32250-0000.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $102,204.96, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until Grantor's interest in any or all of the Property is foreclosed, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property



# MORTGAGE
## (Continued)

shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

# MORTGAGE
## (Continued)



**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.



**MORGAGE**
**(Continued)**                                                                        **Page 4**

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs



# MORGAGE
## (Continued)

and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Mortgage if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Mortgage or in any agreement related to this Mortgage.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or



**MORGAGE**
**(Continued)**

(2)  vacate the Property immediately upon the demand of Lender.

**Other Remedies.**  Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.**  To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.**  Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.**  All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.**  If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.**  Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**PAYMENT INFORMATION.**  If you make a payment(s) before or after the due date, the amount of your final payment may be higher or lower than the original scheduled amount. We may accept late payments or partial payments, even though marked "Payment in Full" (or a similar notation). We may accept payments accompanied by a letter stating that acceptance of the payment indicates our agreement to the terms set forth in the letter without giving up, waiving or losing any of our rights under law or under this Note. You will make all payments by check or money order, payable to us, drawn in U.S. dollars and payable through a U.S. financial institution or the U.S. Post Office. We will credit payments to this Note on the business day received if received before 2:00 P.M. at the location we specify or at one of our banking centers in the state of our address first described above. Otherwise, payments may not be credited to your loan for up to five (5) business days, even if payment is received under our arrangement with an affiliated bank to accept payments from our customers or at one of our ATMs. A business day is any day Monday through Friday that is not a legal holiday. Unless otherwise required by applicable law, to determine whether a late charge is due, we will apply any payment received to the oldest payment due.

**NONTITLED SPOUSES AND NON-BORROWER GRANTORS.**  Any Grantor or Trustor who signs this Deed of Trust, Mortgage or Modification ("Security Instrument") but does not execute the Note or Credit Agreement ("Non-borrower Grantor or Trustor"): (a) is signing only to grant, bargain, sell and convey such Non-borrower Grantor's or Trustor's interest in the Property under the terms of this Security Instrument; (b) is not by signing becoming personally obligated to pay the Note or Credit Agreement; and (c) agrees that without such Non-borrower Grantor's or Trustor's consent, Lender and any other Grantor or Trustor may agree to renew, extend, modify, forbear or make any accommodations with regard to the terms of all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the obligation evidenced by the Note or the Credit Agreement ("Related Document").

Any spouse of a Grantor or Trustor who is not in title to the Property and who signs this Security Instrument: (a) is signing only to grant, bargain, sell and convey any marital and homestead rights of such spouse in the Property; (b) is not by signing becoming personally obligated to pay the Note or Credit Agreement; and (c) agrees that without such spouse's consent, Lender and any other Grantor or Trustor may agree to renew, extend, modify, forbear or make any accommodations with regard to the terms of any Related Document.

Neither of the two foregoing sentences limit the liability of any Non-borrower Grantor or Trustor or signing spouse of a Grantor who is a borrower, as applicable, under any guaranty agreement or other agreement by such person, whereby such person becomes liable for the Indebtedness in whole or in part; both such sentences apply notwithstanding any language to the contrary in this Security Instrument or any of the Related Documents and apply only to the extent permitted by applicable law.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Mortgage:

**Amendments.**  What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be



# MORGAGE
## (Continued)

Page 7

signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by and interpreted in accordance with federal law and the laws of the State of Florida. This Mortgage has been accepted by Lender in the State of Florida.**

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means BONITA N DONOVAN and includes all co-signers and co-makers signing the Note.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means BONITA N DONOVAN.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Bank of America, N.A., its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated November 10, 2004, **in the original principal amount of**



**MORTGAGE**
**(Continued)**

Page 8

**$102,204.96** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The final maturity date of the Note is November 30, 2019.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**WAIVER OF FUTURE ADVANCES UNDER PRIOR MORTGAGE.** Grantor hereby agrees that the principal indebtedness secured by any mortgages or security agreements which are senior to the lien of this Mortgage shall not exceed the amount which upon the date of the execution of this Mortgage has actually been advanced and is secured by each such prior mortgage and security agreement. As principal indebtedness of such prior mortgages or security agreements is reduced, the maximum amount that may be secured thereby shall also be reduced to the then outstanding principal balance(s). Grantor hereby waives the right to receive any additional or future advances under any such prior mortgages or security agreements. This paragraph shall constitute the notice required by Florida Statutes Section 697.04(b).


**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

X _____
    **BONITA N DONOVAN**

**WITNESSES:**

X _____

X _____

**MORTGAGE**
(Continued)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Flerida_ )
) SS
COUNTY OF _Duval_ )

The foregoing instrument was acknowledged before me this _10th_ day of _November_ , 20_04_
by **BONITA N DONOVAN**, who is personally known to me or who has produced _____ as identification and
did / did not take an oath.

_____
(Signature of Person Taking Acknowledgment)

_____Julie Kristin Baer_____
(Name of Acknowledger Typed, Printed or Stamped)

_____AVP_____
(Title or Rank)

_____
(Serial Number, if any)

**JULIE KRISTIN BAER**
Notary Public, State of Florida
My comm. expires Sept. 16, 2008
No. DD 355469

LASER PRO Lending, Ver. 5.24.00.303 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved. - FL C:\CFI\CFILPL\G03.fc TR-21615496 PR-ZMORT

PAY TO THE ORDER OF

_____

WITHOUT RECOURSE
Bank of America, N.A.

BY _____
JOHN E. MACK
SR. VICE PRESIDENT

| Customer Name: | BONITA N DONOVAN |
|---|---|
| Application #: | 007521816486 |

**Exhibit A (Legal Description)**

ALL THAT CERTAIN LAND SITUATE, LYING AND BEING IN DUVAL COUNTY, FLORIDA, VIZ:

UNIT 1, SOUTH BEACH TOWNHOMES, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM AS RECORDED IN OFFICIAL RECORDS VOLUME 8386, PAGE 782, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA, TOGETHER WITH AN UNDIVIDED ONE-FORTH INTEREST IN THE COMMON ELEMENT AS DEFINED AND DESCRIBED IN THE SAID DECLARATION OF CONDOMINIUM.

Being that parcel of land conveyed to Bonita N. Donovan, a married woman from Ron Hayward and Dorothy S. Hayward, his wife by that deed dated 07/27/2001 and recorded 08/02/2001 in Deed Book 10093, at Page 942 of the DUVAL COUNTY, FL Public Registry.

Tax Map Reference: 179438-0910

PAY TO THE ORDER OF

WITHOUT RECOURSE
Bank of America, N.A.

BY

JOHN E. MACK
SR. VICE PRESIDENT

# PROMISSORY NOTE

**ACC** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Borrower:** BONITA N DONOVAN
135 20TH AVE S
JACKSONVILLE BEACH, FL 32250-0000

**Lender:** Bank of America, N.A.
c/o Florida Main Office
Bank of America Plaza
P.O. Box 31590
Tampa, FL 33631

| | | |
|---|---|---|
| **Principal Amount: $102,204.96** | **Interest Rate: 6.100%** | **Date of Note: November 10, 2004** |

**PROMISE TO PAY.** I ("Borrower") promise to pay to Bank of America, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Two Thousand Two Hundred Four & 96/100 Dollars ($102,204.96), together with interest at the rate of 6.100% per annum on the unpaid principal balance from November 15, 2004, until paid in full.

**PAYMENT.** I will pay this loan in 179 payments of $870.23 each payment and an irregular last payment estimated at $870.79. My first payment is due December 30, 2004, and all subsequent payments are due on the same day of each month after that. My final payment will be due on November 30, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to : first, all interest due and owing on the date payment is credited, then to principal, then to fees or charges due under this Note, including any unpaid collection costs and late charges. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will relieve me of my obligation to continue to make payments under the payment schedule and will be applied to the next - due payment(s). If a prepayment is insufficient to meet the entire requirements of a particular future installment then I shall be obligated to pay such portion of the installment not covered by the partial prepayment. My obligation to continue to make regular payments under the payment schedule will resume with the next payment coming due after all early payments have been applied. Early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse" or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any checks or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Lender at the address shown on my coupon book or statement.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 18.000% per annum, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Note will be governed by and interpreted in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $25.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**GARNISHMENT.** I consent to the issuance of a continuing writ of garnishment or attachment against my disposable earnings, in accordance

with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein: a Mortgage dated November 10, 2004, to Lender on real property located in DUVAL County, State of Florida.

**PROPERTY REQUIREMENTS.** If this Note is secured by real or personal property (the "Collateral"), you will do all things required under the Collateral agreement. If we incur an expense because you do not fulfill all the obligations of this Note, or if you or another party do not fulfill all obligations under the Collateral agreement, you will pay those expenses under this Note. If this Note is secured by insurable real or personal Collateral, you agree to obtain and keep maintained, or cause to be obtained and maintained, property insurance, flood insurance (if applicable) and any other insurance required by us for the Collateral in an amount described in the Collateral agreement. You will pay the charge for such insurance, which may be subject to interest at the rate described in this Note. We have the option to reschedule your regular payments for the remaining term (thus increasing the regularly scheduled payment to incorporate the amount of insurance premium plus finance charges on the premium), require a lump sum payment at the maturity of this Note, or demand payment of the premium for this insurance.

**PAYMENT INFORMATION.** If you make a payment(s) before or after the due date, the amount of your final payment may be higher or lower than the original scheduled amount. We may accept late payments or partial payments, even though marked "Payment in Full" (or a similar notation). We may accept payments accompanied by a letter stating that acceptance of the payment indicates our agreement to the terms set forth in the letter without giving up, waiving or losing any of our rights under law or under this Note. You will make all payments by check or money order, payable to us, drawn in U.S. dollars and payable through a U.S. financial institution or the U.S. Post Office. We will credit payments to this Note on the business day received if received before 2:00 P.M. at the location we specify or at one of our banking centers in the state of our address first described above. Otherwise, payments may not be credited to your loan for up to five (5) business days, even if payment is received under our arrangement with an affiliated bank to accept payments from our customers or at one of our ATMs. A business day is any day Monday through Friday that is not a legal holiday. Unless otherwise required by applicable law, to determine whether a late charge is due, we will apply any payment received to the oldest payment due.

**AUTOMATIC PAYMENT AND RESERVATION OF RIGHTS.** If you choose to have payments made from a designated account and have arranged with us to do so, we will automatically draft the payment. Drafts will be made on the payment due date or immediately after the payment due date (if the payment due date is on a Saturday, Sunday or legal holiday). If your account does not contain the payment amount due, you understand that it is your obligation without notice from us to make the full payment. Even if you make a manual payment an automatic payment will be drafted from your designated account, unless you make such manual payment for the full payment due at least three (3) business days prior to the due date; however, if you make less than a full manual payment at least three (3) business days prior to the due date, only the remaining amount currently due will be drafted. To stop an automatic draft, you must contact us at least three (3) business days prior to the scheduled payment draft date. We may accept late payments, partial payments or checks and money orders marked "payment in full" (or similar notations) or payments accompanied by a letter stating that our acceptance of the payment indicates our agreement to the terms set forth in the letter without giving up, waiving or losing any of our rights under law or under this Agreement.

**MISCELLANEOUS.** If this Note or Agreement represents a renewal, modification, extension, substitution or consolidation of an obligation owed to us, then you acknowledge and agree that there are no claims, setoffs, avoidances, counterclaims or defenses or rights to claims, setoffs, avoidances, counterclaims or defenses to payment or enforcement of the prior obligation. You agree that if this Note or Agreement is in default, including the failure to make the Minimum Payment by the due date, you will accept calls regarding the collection of this Note or Agreement at any residence or place of employment. The calls can be automatically dialed and a recorded message may be played. You agree such calls will not be "unsolicited" calls for purposes of any federal, state or local law. To improve customer service and security, telephone communications with you may be monitored and recorded. You agree that monitoring or recording may be done and that no additional notice to you or additional approval from you is needed. You authorize us, our parent company, Bank of America Corporation (or any successor company) and Bank of America Corporation's affiliates and subsidiaries ("Affiliates") to: (a) obtain other information deemed necessary concerning the granting and maintaining of this Note or Credit Line Account, including the obtaining of credit bureau and other reports concerning your credit experience and other information from credit reporting agencies, creditors, any department of motor vehicles or similar state agency, your employer (past, present and future) and other persons (and all such entities may release and/or verify such information to us at any time without notification to you or without your consent), and (b) share information with our Affiliates, except to the extent that you have opted out of such sharing as provided in our Privacy Policy for Consumers. This Note or Agreement constitutes the entire understanding and agreement between the parties as to the matters set forth in this Note or Agreement and supersedes all prior understandings and correspondence, oral or written, with respect to the subject matter hereof. We reserve the right to defer or delay the date certain changes are to occur without notice and without being liable for any such deferment or delay. A court decree for divorce or separation or a non-court approved mutual agreement does not affect, eliminate or reduce any person's liability for the Note or Credit Line balance if we are not a party to the decree or agreement. Notwithstanding any other provision contained in the Note or this Agreement, we do not intend to charge, and you shall not be required to pay, any amount of finance charge or fee more than the maximum permitted by applicable law. Any payment in excess of the maximum shall be refunded to you or credited against principal, at our option. If this Note or CreditLine Agreement is a renewal of a prior Note or CreditLine Agreement, then it is the intent of the parties that the Note or CreditLine Agreement evidencing the original extension of credit not be extinguished by the renewal. It is further the intent of the parties that no novation shall occur by the renewal of such extension of credit. Our records shall be evidence of whether this Note or CreditLine Agreement is a renewal. The word "you" shall also mean Borrower. The word "we" shall also mean Lender.

**ADDITIONAL GENERAL PROVISIONS.** We reserve the right to waive or reduce any or all fees from time to time in our sole discretion without notice. Unless required by law, we need not pay any refund if the amount is less than one dollar ($1.00). Acceptance of partial payments or partial performance shall not operate as a waiver of any requirement under this Note. Any notice from us shall be deemed to be reasonable if mailed to your address at least five (5) calendar days before the time of the event to which such notice relates. It is your sole and exclusive responsibility to determine any and all aspects of federal, state and local tax law regarding the deduction of interest and costs on this Note. You should consult a tax advisor regarding the deductibility of interest and costs incurred under this Note. We have not provided and do not provide tax advice of any kind. At any time, we may assign or transfer this Note to another person or entity and the assignee will have all of our rights under this Note. You cannot assign or transfer any of your rights or responsibilities under this Note.

**RIGHT OF SETOFF.** Borrower agrees and authorizes Lender, upon an event of default occurring and to the extent allowed by applicable law, to charge, withdraw or set off all sums owed under this Note or Agreement against any of Borrower's deposits and accounts or securities now or hereafter in the possession of or on deposit with Lender or any Bank of America Corporation affiliate or subsidiary, including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future (excluding all IRA, Keogh and trust accounts), without prior notice to or demand on Borrower and, at Lender's option, administratively to freeze all such accounts to allow Lender to protect Lender's rights provided in this paragraph. Borrower hereby grants to Lender a contractual possessory security interest in such accounts, and hereby assigns, conveys, delivers, pledges and transfers to Lender all of Borrower's rights, title and interest in such accounts.

**BORROWERS PROTECTION PLAN.** (Borrowers Protection Plan is a registered trademark of Bank of America Corporation.) If you selected the optional Borrowers Protection Plan, each of the Borrowers covered by the Plan must sign the Optional Borrowers Protection Plan Addendum, which is made a part of and incorporated into this Note. Interest is not charged on the fees for Borrowers Protection Plan.

**FL LOANS ONLY: BOOKING/MAINTENANCE FEE.** A portion of the Bank Fee (an amount equal to the lesser of $50 or 2% of the Amount of the

Note), if any, disclosed in the Itemization of Amount Financed, is a booking/maintenance fee as provided by Florida Statutes, Section 658.49 (as amended from time to time). Any amount above the booking/maintenance fee is either a loan or an origination fee. All fees, charges and other expenses of this loan (if this Promissory Note is secured by real property) are authorized pursuant to Chapter 665, Florida Statutes and Chapter 687.12, Florida Statutes.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. I do not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to me. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X ~~*Bonita N Donovan*~~
**BONITA N DONOVAN**

338.05

NOV 15 2004

---

### Florida Documentary Stamp Tax

Florida documentary stamp tax in the amount required by law has been paid with respect to this Note on the securing this Note.

LASER PRO Lending, Ver. 5.24.00.303 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved. - FL C:\CFI\CFI\LPL\D20.fc TR-21816486 PR-2MORT

UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 08-02133-JAF
CHAPTER 11 CASE

IN RE:

BONITA NIX DONOVAN

Debtor.
_____/

STATE OF NEW YORK
COUNTY OF ERIE

### AFFIDAVIT IN SUPPORT OF MOTION
### FOR RELIEF FROM STAY

BEFORE ME, the undersigned authority, on this day personally appeared Jennifer Schnaufer on behalf of **BANK OF AMERICA, N.A.**, who is over the age of eighteen years, is fully qualified and authorized to give this Affidavit and has personal knowledge of the matters addressed herein. After being by me duly sworn on her/his oath deposed and stated:

1. My name is Jennifer Schnaufer. I am Assistant Vice President for **BANK OF AMERICA, N.A.**

2. **BANK OF AMERICA, N.A.**, with regards to this loan with **BANK OF AMERICA, N.A.** In the course of my employment, I have become familiar with the manner and method in which **BANK OF AMERICA, N.A.**, maintains its books and records in its regular course of business. Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.

3. **BANK OF AMERICA, N.A.** had to retain Counsel to represent it before this Court and is incurring legal expenses and attorneys' fees of at least $800.00 for handling the Motion for Relief from Stay for which it is entitled to reimbursement under the terms of the Note.

08-48203

4. I have reviewed the books and records which reveal that **BANK OF AMERICA, N.A.** is the owner and holder of a real estate Note ("Note") which is secured by a Deed of Trust of even date executed by **BONITA N DONOVAN** on or about November 10, 2004.

5. As of July 22, 2009, debtors were in default on (23) monthly mortgage payments of $870.23 each (8/1/2007-7/1/2009). As of the date Movant's Motion was filed, the principal balance owed by Debtors to **BANK OF AMERICA, N.A.** was $90,327.64.

6. The foregoing facts are of my own personal knowledge and belief, and if called upon to appear as a witness, I could, and would, testify completely thereto. I declare under penalty of perjury that to the best of my knowledge, the foregoing facts are true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Affiant

Sworn to and subscribed before me this
24th day of July, 2009.
NOTARY PUBLIC, State of New York
Commissioned Name of Notary Public <u>Michelle D. Card</u>
Personally known <u>X</u> or produced identification
Type of Identification Produced

_____
**MICHELLE D. CARD**
**Notary Public - State of New York**
**No. 01CA6198732**
**Qualified in Niagara County**
**My Commission Expires Dec. 29, 2012**



08-48203



**P.O. Box 970**
**Downers Grove, IL 60515-0970**
**WOID: 259431    ACCESS#: 259431**

**BROKER PROPERTY ANALYSIS and VALUE**
| | |
|---|---|
| **Date** | 09/17/2008 |
| **Broker Firm Name** | REM Corp |
| **Address** | 6900 Main St |
| **City, State, Zip** | Downers Grove, IL 60516 |
| **Agent Name** | Urania Martin |
| **Phone** | 904-551-6762 |

**SUBJECT PROPERTY**

Servicer Loan No 7022857648

Address 135 20th Ave S

City Jacksonville Beach

Legal Description Condominium

Assessed $ 457,000

County

State FL

Ann. Taxes $ 6,088

Unit No.

Zip 32250

Occupied   Yes **X**   No __

Exterior Inspection **X**

Interior Inspection __

**PROPERTY TYPE** SFD __      Townhouse __      Condo **X**      Multi Family __      PUD __

## PROPERTY WITH RECENT COMPARABLE SALES

| Item | Subject | Comparable 1 | Comparable 2 | Comparable 3 |
|---|---|---|---|---|
| **Address** | 135 20th Ave S | 4300 South Parkway #2309 | 4300 South Beach Parkway #3202 | 4300 South beach parkway #3325 |
| **Proximity to** | **SUBJECT** | .10 | .10 | .10 |
| **Listing Price** | $ | $439000 | $449900 | $449900 |
| **Sale Amount** | $ | $439000 | $449000 | $449000 |
| **Sale Date** | | 02/12/2008 | 10/23/2007 | 11/05/2007 |
| **Days on Market** | | 245 | 832 | 754 |
| **Levels/Style** | Tri Level/Ranch | Tri Level/Ranch | Tri Level/Ranch | Tri Level/Ranch |
| **Exterior Const.** | Stucco | Stucco | Stucco | Stucco |
| **Square Feet** | 2200 | 1868 | 1868 | 1868 |
| **Age** | 12 | 2 | 4 | 4 |
| **Basement** | None | None | None | None |
| **Total Rooms** | 6 | 6 | 6 | 6 |
| **# Bed Rooms** | 3 | 3 | 3 | 3 |
| **# Baths** | 4 | 2 | 2 | 2 |
| **Family Room** | Yes | Yes | Yes | Yes |
| **Garage/# Car** | Att 2 Gar | None | None | None |
| **Lot Size** | Condo | Condo | Condo | Condo |
| **Overall Cond.** | Good | Good | Good | Good |
| **Design/Appeal** | Ranch/Good | Ranch/Good | Ranch/Good | Ranch/Good |

**Comments**

Comp 1; Inferior GLA, family room, split bedrooms & tile floors. Comp 2; Inferior GLA, family room & tile floors, Comp 3; Inferior GLA; assigned parking, family room & tile floors.

## PAGE ONE OF TWO



**BROKER PROPERTY ANALYSIS and VALUE**

**Date**                 09/17/2008

P.O. Box 970
Downers Grove, IL 60515-0970

Servicer Loan No <u>7022857648</u>

| COMPETITIVE LISTINGS | | | | |
|---|---|---|---|---|
| **Item** | **Subject** | **Comparable 1** | **Comparable 2** | **Comparable 3** |
| Address | 135 20th Ave S | 4300 South Beach #2302 | 4300 South Beach #2202 | 4300 South Beach #2302 |
| Proximity to | SUBJECT | .10 | .10 | .10 |
| Listing Price | $ | $429000 | $439000 | $475000 |
| Days on Market | | 163 | 217 | 296 |
| Levels/Style | Tri Level/Ranch | Tri Level/Ranch | Tri Level/Ranch | Tri Level/Ranch |
| Exterior Const. | Stucco | STUCCO | STUCCO | STUCCO |
| Square Feet | 2200 | 1868 | 1868 | 1868 |
| Age | 12 | 2 | 2 | 2 |
| Basement | None | None | None | None |
| Total Rooms | 6 | 6 | 6 | 6 |
| # Bed Rooms | 3 | 3 | 3 | 3 |
| # Baths | 4 | 2 | 2 | 2 |
| Family Room | Yes | Yes | Yes | Yes |
| Garage/# Car | Att 2 Gar | None | None | None |
| Lot Size | Condo | Condo | Condo | Condo |
| Overall Cond. | Good | Good | Good | Good |
| Design/Appeal | Ranch/Good | Ranch/Good | Ranch/Good | Ranch/Good |

**Comments**

Comp 1; Inferior GLA, family room, split bedrooms & tile floors. Comp 2; Inferior GLA, family room & tile floors, Comp 3; Inferior GLA; assigned parking, family room & tile floors.

| | 90-120 Day "As Is" | 30-60 Day Quick Sale | 90-120 Day "As Repaired" |
|---|---|---|---|
| Estimated Sale Price | $439,000 | $419,000 | n/a |
| Estimated List Price | $449,000 | $429,000 | n/a |

**Suggested repairs and improvements:**

Subject exterior appears to be in overall good condition; no visible exterior repairs necessary. Note: We had to expand our search 12mths to locate sold comps, sales are taking longer as market area values decline.

**This report is not an appraisal. The purpose of this report is to obtain information that supports strategy and an analysis of the most likely sales prices for this property.**